**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | **)** **)** **)** | |
| Plaintiff, | **)** **)** | Civil Action No. |
| v. | **)** **)** | **COMPLAINT** |
| ACCENTCARE, INC. | **)** **)** | |
| Defendant. | **)** **)** **)** | |

**NATURE OF THE ACTION**

The U.S. Equal Employment Opportunity Commission ("the Commission" or "EEOC") brings this action against AccentCare, Inc. ("Defendant") under the Equal Pay Act of 1963 ("EPA"), to restrain the unlawful payment of wages to employees of one sex (female) at rates less than the rates paid to employees of the opposite sex (male) and to collect back wages due to employees as a result of such unlawful payments; under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to persons harmed by those practices; and under the EPA, Title VII, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Rachael McGeoy. As alleged with greater particularity below, the Commission alleges that since at least February 2022, Defendant discriminated against Rachael McGeoy and a class of female Licensed Practical Nurses ("LPNs") working out of Defendant's Pottsville, Pennsylvania office when it paid them lower wages than it paid a male counterpart for performing equal work, that Defendant intentionally did so on the basis of sex, and that Defendant unlawfully retaliated against Ms. McGeoy following her repeated complaints of sex-based pay disparity, culminating in her termination.

**JURISDICTION AND VENUE**

1.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Sections 6(d) and 15 of the FLSA, 29 U.S.C. §§ 206(d), 215(a)(3), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.       The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

**PARTIES**

3.       Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of, *inter alia*, the Equal Pay Act and Title VII, and is expressly authorized to bring this action pursuant to Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705, and by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4.       At all relevant times, Defendant has been a corporation continuously doing business and operating within the Commonwealth of Pennsylvania and Schuylkill County, Pennsylvania, with its headquarters in Dallas, Texas.

5.       At all relevant times, Defendant has continuously had at least fifteen (15) employees.

6.       At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b),

2

(g) and (h).

7.    At all relevant times, Defendant has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

8.    At all relevant times, Defendant has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j) and has continuously been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprise has continuously been an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

## ADMINISTRATIVE PROCEDURES

9.    All conditions precedent to the institution of this lawsuit have been fulfilled.

10.    More than thirty days prior to the institution of this lawsuit, Ms. McGeoy filed a Charge of Discrimination with the EEOC alleging pay discrimination and retaliation in violation of Title VII and the EPA by Defendant.

11.    Following the EEOC's investigative process, the agency issued a Letter of Determination dated August 12, 2024, notifying Defendant that EEOC had found that Defendant had subjected Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville, PA office to pay discrimination in violation of Title VII and the EPA, and had subjected Ms. McGeoy to retaliation for making complaints of sex-based pay discrimination in violation of Title VII and the EPA.

12.    EEOC's Letter of Determination invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to resolve the discrimination found to have occurred.

13.    EEOC provided Defendant with proposed terms for settlement and engaged in communications with Defendant concerning settlement.

14.    EEOC was unable to secure a conciliation agreement on terms acceptable to the Commission.

15.    EEOC issued Defendant a Notice of Conciliation Failure on September 4, 2024.

## STATEMENT OF CLAIMS

16.    Defendant is a nationwide healthcare services company that provides, among other services, direct post-acute healthcare to patients in their homes.

17.    At all relevant times, Defendant has operated a home healthcare facility physically located at 121 Progress Ave. #300, Pottsville, PA 17901 ("the Pottsville office").

18.    Defendant employed LPNs, also referred to as Licensed Vocational Nurses ("LVNs"), to work out of the Pottsville office.

19.    At all relevant times, LPNs working out of Defendant's Pottsville office performed the same core duties, which included:

      a.  Performing technical nursing functions and directing patient care consistent with the established plan of care and under the supervision of a Registered Nurse ("RN");

      b.  Educating and instructing the patient, as well as his or her family members, about treatment requirements and medication management and distribution;

      c.  Updating the patients' charts in order to document the LPN's visits.

20.    At all relevant times, LPNs working out of the Pottsville office functioned under the same job description and had the same performance criteria and job expectations.

21.    At all relevant times, LPNs working out of the Pottsville office performed their

duties using the same types of equipment and processes.

22.    At all relevant times, LPNs working out of the Pottsville office worked similar schedules, including scheduling weekend work, on-call, and holiday work.

23.    At all relevant times, LPNs performed their work by traveling to each patient's home and providing medical treatment at the patient's home. LPNs working out of the Pottsville office traveled to see patients within Schuylkill County.

24.    At all relevant times, each LPN working out of the Pottsville office was assigned a particular territory within Schuylkill County and was responsible for seeing patients within their assigned territories.

25.    At the beginning of each week, LPNs working out of the Pottsville office received from Defendant a non-finalized schedule detailing the location and identity of each patient they would be traveling to see that week. However, because patients were often unavailable at the date or times originally identified by Defendant, the schedule frequently changed so that patients were removed and added to each LPN's schedule throughout the week. Due to this frequent rescheduling, an LPN's schedule each day was not finalized until the night before they departed to see their patients.

26.    Sharon Russell was hired as a full-time LPN working out of Defendant's Pottsville office on December 16, 2019.

27.    Ms. Russell has been a licensed LPN since 1995.

28.    Prior to being hired by Defendant, Ms. Russell had worked as an LPN for approximately 10 years, had extensive nursing experience, and had worked as a home healthcare LPN treating patients in their homes since at least 2013.

29.    Ms. Russell's starting hourly rate was $26.74. It was later raised in June 2022 to

$30.00.

30.    In October 2023, Ms. Russell transitioned to a part-time LPN position at an hourly rate of $35.00.

31.    Jamie Winters was hired as a full-time LPN working out of Defendant's Pottsville office on January 31, 2022 at an hourly rate of $27.00.

32.    Ms. Winters has been a licensed LPN since July 2021.

33.    Prior to working for Defendant, Ms. Winters had worked as an LPN for approximately six months in a pediatrician's office.

34.    In December 2022, approximately 17 months after receiving her LPN license, Ms. Winters's hourly rate was increased to $32.00, where it remained until her resignation in August 2023.

35.    Rachael McGeoy was hired as a full-time LPN working out of Defendant's Pottsville office on February 8, 2022 at an hourly rate of $29.00.

36.    Ms. McGeoy has been a licensed LPN since 2010.

37.    Prior to working for Defendant, Ms. McGeoy had more than eleven years of experience working as an LPN, including extensive experience in home healthcare where she treated patients in their homes.

38.    Ms. McGeoy's hourly rate remained the same throughout her employment.

39.    Throughout her employment, Ms. McGeoy received positive performance evaluations from Defendant.

40.    In July 2022, Defendant hired Robert Scheuerer as a full-time LPN working out of the Pottsville office. Mr. Scheuerer was given a starting hourly rate of $33.00.

41.    At the time he was hired, Mr. Scheuerer's hourly rate was the highest hourly rate of

any other full-time LPN in the Pottsville office, all of whom were women.

42.    During the entire period that Mr. Scheuerer was performing LPN duties full-time, Defendant paid him at an hourly rate of $33.00.

43.    When he was hired by Defendant, Mr. Scheuerer had only been a licensed LPN for a little over a year, having earned his license in March 2021.

44.    Around the time of his hire, Mr. Scheuerer represented to Defendant that, for two months in 2014, he had served in the U.S. Navy's Field Medical Training Battalion and that, for an unspecified period of time from 2014–2015 and 2016–2017, he worked as a trauma/surgeon aide and medic. Mr. Scheuerer represented that his next job was six years later, as a Community Vaccinator administering the COVID-19 vaccination for approximately seven months.

45.    At his hiring, Mr. Scheuerer also represented to Defendant that, after earning his LPN license in March 2021, he had overlapping employment for approximately 16 months total as a Staff Nurse for a skilled nursing and rehabilitation center (approximately eight months), per diem work as a Hospice Nurse at a hospice center (approximately one year), and a Medical Surgical LPN (approximately seven months).

46.    Prior to working with Defendant, Mr. Scheuerer had never worked as a traveling home healthcare LPN.

47.    During their employment, Ms. McGeoy, Ms. Winters, Ms. Russell, and Mr. Scheuerer were each managed and supervised by the same individuals.

48.    Defendant paid Ms. McGeoy less to perform LPN duties than it paid Mr. Scheuerer to perform the same LPN duties.

49.    Defendant paid Ms. Winters less to perform LPN duties than it paid Mr. Scheuerer to perform the same LPN duties.

50.     Defendant paid Ms. Russell less to perform LPN duties than it paid Mr. Scheuerer to perform the same LPN duties.

51.     After Mr. Scheuerer was hired by Defendant, Ms. McGeoy was assigned as his Preceptor to train him and oversee his performance for the first 90 days of his employment.

52.     During his training, Mr. Scheuerer disclosed to Ms. McGeoy that he only been trained in basic first aid and had worked in the Navy for only six months before injuring his knee.

53.     While Ms. McGeoy conducted his training, Ms. McGeoy observed that Mr. Scheuerer struggled with both clinical and non-clinical job duties, including documenting and charting his patient visits, as well as basic wound care.

54.     In December 2022, Mr. Scheuerer requested remote work or to begin working per diem. The last day he worked for Defendant was January 5, 2023.

55.     A few days after he was hired in July 2022, Mr. Scheuerer shared his hourly rate with Ms. McGeoy.

56.     That same day, Ms. McGeoy met with her immediate supervisor, RN Lindsey Seltzer, to discuss the pay disparity and complained that the disparity was unlawful under the Fair Labor Standards Act ("FLSA") .

57.     During this conversation, Ms. Seltzer instructed Ms. McGeoy to request a raise from Heather Joyce, the Territory Operation Director for the division of AccentCare that included the Pottsville office.

58.     In approximately late July or early August 2022, Ms. McGeoy sent a raise request letter to Ms. Joyce which detailed the pay difference between herself and Mr. Scheuerer, as well as the differences in their work experiences as LPNs.

59.     A few days after submitting her raise request letter to Ms. Joyce, Ms. McGeoy met

with Ms. Joyce about the pay disparity and questioned why Defendant was paying Mr. Scheuerer higher wages than her, given the deficiencies she had observed in Mr. Scheuerer's abilities as an LPN during her training of him.

60.     Ms. Joyce assured Ms. McGeoy that she (Ms. Joyce) would request a raise for Ms. McGeoy, stating that Ms. McGeoy was their best LPN and deserved a raise.

61.     Ms. McGeoy also complained to Christine Carl, then an RN working out of the Pottsville office, about the pay disparity between Mr. Scheuerer and the other female LPNs in the office, as well as her belief that it was illegal.

62.     Over the next several months, Ms. McGeoy inquired with Ms. Seltzer and Ms. Joyce about the status of her raise and was told the raise was still in progress.

63.     Eventually, Ms. Seltzer informed Ms. McGeoy that, per Ms. Joyce, Ms. McGeoy would not be eligible for a raise until she had worked for Defendant for 10 months.

64.     Accordingly, in November 2022, having fulfilled 10 months of service, Ms. McGeoy submitted another raise request letter to Ms. Joyce. The letter included details relating to the pay difference between herself and Mr. Scheuerer, the disparity in their work experiences, and that Ms. McGeoy had previously requested a raise at least three other times.

65.     In response, Ms. Joyce assured Ms. McGeoy that the request was in Defendant's system, it would be approved, and it would be made retroactive to November 2022.

66.     Ms. McGeoy continued to follow up regarding the status of her raise, including in mid-June 2023, when she emailed Ms. Joyce and asked whether her raise had been denied. For the first time, Ms. Joyce informed Ms. McGeoy that Defendant had placed a raise freeze on all its branches, but that Ms. Joyce was hopeful it would be lifted when yearly performance reviews were completed.

67.    Over that summer, Ms. McGeoy also inquired about her raise with her new supervisor, Ms. Carl, who had taken over as the Patient Care Manager for the Pottsville office. Consistent with her previous discussions with Ms. Carl on the subject, during these conversations, Ms. McGeoy detailed the pay disparity between Mr. Scheuerer and the other female LPNs and reiterated her belief that it was illegal. Ms. Carl assured Ms. McGeoy that she would speak with Ms. Joyce about Ms. McGeoy's raise request.

68.    In July 2023, Defendant notified Ms. McGeoy and the two other LPNs working out of the Pottsville office that the territory of Schuylkill County would be refigured due to reduced staffing.

69.    One of the LPNs resigned in or around early August 2023, leaving Ms. McGeoy and Ms. Russell. Rather than evenly divide the County between the remaining two LPNs, Defendant allowed Ms. Russell to service her existing territory of 25%, thereby extending Ms. McGeoy's territory to 75% of the County. This extended territory dramatically increased the distance Ms. McGeoy would be required to travel, which imposed a financial hardship both in paying for gas and because she was not compensated for the travel time to and from patients.

70.    Ms. McGeoy requested that Defendant equalize the territory to ensure that she could service all her patients without financial hardship. Defendant refused and made clear that the newly configured territory was non-negotiable.

71.    On August 14, 2023, Ms. McGeoy received a favorable performance review during a meeting with Ms. Carl.

72.    Ms. McGeoy was rated as "Meets Expectations" for each criterion and the evaluation noted that Ms. McGeoy "values her employment and strives to be the best she can in her role while following Accentcares vision."

73.    During the meeting, however, Ms. Carl disclosed to Ms. McGeoy that although Ms. Carl had originally rated Ms. McGeoy as "Exceeds Expectations," her initial rating had been overridden. When Ms. McGeoy asked why, Ms. Carl stated that Ms. Joyce had told her (Ms. Carl) that if Ms. Carl's "Exceeds Expectations" rating had gone through, Ms. McGeoy would have received a raise.

74.    Hopeful that her positive yearly evaluation would lift the pay freeze as referenced by  Ms. Joyce's earlier email, Ms. McGeoy reached out to Deb Pronzato, the Regional Director of Operations to ask when the pay freeze would be lifted, only to learn that that there was no pay freeze and that there had never been a pay freeze.

75.    During the same call with Ms. Pronzato, Ms. McGeoy again complained about the pay disparity between herself and Mr. Scheuerer, explaining that all of the LPNs were performing the same duties and stated her belief that the disparity violated the Equal Pay Act. Ms. Pronzato responded that she was aware, but that she could not speak to Ms. McGeoy about it.

76.    Shortly after she learned from Ms. Pronzato that there had never been a pay freeze, Ms. McGeoy informed Ms. Carl that she was going to be filing a complaint with the EEOC due to the pay disparity.

77.    Approximately one day after speaking with Ms. Carl about her plans to go to the EEOC, and after months of Ms. McGeoy's repeated complaints of pay disparities and requests for a raise, on or about August 22, 2023, Ms. Carl and Ms. Joyce called Ms. McGeoy and terminated her employment.

## Count One: Pay Discrimination (Title VII)
### 42 U.S.C. § 2000e-2(a)

78.    EEOC hereby repeats and incorporates by reference the foregoing allegations.

79.    Since at least February 2022, Defendant has engaged in unlawful employment

11

practices in violation of Sections 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by discriminating against Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville office with respect to their compensation because of their sex.

80.    The effect of the practices complained of above has been to deprive Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville office of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

81.    The unlawful employment practices complained of above were intentional.

82.    The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville office.

## Count Two: Pay Discrimination (EPA)
## 29 U.S.C. §§ 206(d)(1) and 215(a)(2)

83.    EEOC hereby repeats and incorporates by reference the foregoing allegations.

84.    Since at least February 2022, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2) by paying Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville office lower wages than those paid to their male colleague for performing equal work in the LPN position.

85.    As a result of the acts complained of above, Defendant unlawfully has withheld and is continuing to withhold the payment of wages due to Ms. McGeoy and a class of female LPNs working out of Defendant's Pottsville office.

86.    The unlawful practices complained of above were and are willful.

## Count Three: Retaliation for Engaging in Protected Activity (Rachael McGeoy)
## 42 U.S.C. § 2000e-3(a)

87.    EEOC hereby repeats and incorporates by reference the foregoing allegations.

12

88.     In or around August 2023, Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by, including but not limited to, discharging Ms. McGeoy because of her protected opposition to employment practices made unlawful by Title VII in the manner described above.

89.     The effect of the practices complained of above has been to deprive Ms. McGeoy of equal employment opportunities and to otherwise adversely affect her status as an employee because she engaged in protected activity.

90.     The unlawful employment practices complained of above were intentional.

91.     The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Ms. McGeoy.

### Count Four: Retaliation for Engaging in Protected Activity (Rachael McGeoy) 29 U.S.C. § 215(a)(3)

92.     EEOC hereby repeats and incorporates by reference the foregoing allegations.

93.     On or around August 2023, Defendant violated Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), by, including but not limited to, discharging Ms. McGeoy for engaging in the protected conduct described above.

94.     The unlawful practices complained of above were willful.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, assignees, and all persons in active concert or participation with Defendant, from discriminating against females with respect to their wages or compensation and from paying female employees lower wages or compensation than one or more male comparators for performing equal work.

B.      Order Defendant to institute and carry out policies, practices and programs that provide equal wages and compensation for women and eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make whole Ms. McGeoy and a class of aggrieved female employees by providing them appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Ms. McGeoy and a class of aggrieved female employees, whose wages were unlawfully withheld as a result of the acts complained of above.

E.      Order Defendant to make whole Ms. McGeoy and a class of aggrieved female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F.      Order Defendant to make whole Ms. McGeoy and a class of aggrieved female employees by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional and mental anguish, pain and suffering, stress and anxiety, loss of enjoyment of life, and humiliation and frustration in amounts to be determined at trial.

G.      Order Defendant to pay Ms. McGeoy and a class of aggrieved female employees punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

H.      Grant such further relief as this Court deems necessary and proper in the public

interest.

      I.        Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                  Respectfully submitted,

                  U.S. EQUAL EMPLOYMENT
                  OPPORTUNITY COMMISSION

                  KARLA GILBRIDE
                  General Counsel

                  DEBRA M. LAWRENCE
                  Regional Attorney

                  /s/ Maria Luisa Morocco
                  MARIA LUISA MOROCCO
                  Assistant Regional Attorney

                  /s/ Clare J. Horan
                  CLARE J. HORAN
                  Trial Attorney
                  MD Bar No. 2001060014
                  U.S. EQUAL EMPLOYMENT
                  OPPORTUNITY COMMISSION
                  Philadelphia District Office
                  801 Market Street, Suite 1000
                  Philadelphia, PA 19107-3127
                  Phone: (267) 589-9769
                  Fax: (215) 440-2606
                  clare.horan@eeoc.gov

Date: September 27, 2024